THE STATE OF OHIO, APPELLEE, *v.* MAZES, APPELLANT.

[Cite as State v. Mazes, 3 Ohio App. 2d 90.]

(No. 9482—Decided April 5, 1965.)

*Mr. Raymond E. Shannon,* prosecuting attorney, and *Mr. Michael M. Nikolin,* for appellee.

*Mr. Allen Brown,* for appellant.

Hover, J. Defendant below appeals, on questions of law, his conviction in the Common Pleas Court of the offense of

knowingly possessing an obscene book entitled "Orgy Club," contrary to the provisions of Section 2905.34 of the Revised Code. He sets out some forty-seven assignments of error, most of which are duplicated and overlapping. Trial was had before a jury, and the matter comes into this court upon the transcript of the docket and journal entries, the bill of exceptions and exhibits in the trial proceedings, and the briefs and arguments of counsel.

Argument was deferred pending a decision by the Supreme Court of the United States in *Jacobellis* v. *Ohio*, 378 U. S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676, in which that court was concerned with the constitutionality of the Ohio statute above, and the legality and sufficiency of the proof offered in support of the offense, in the hope that some light would be shed upon the constantly recurring questions arising in this always difficult field. The hope was not fulfilled.

Although the conviction in *Jacobellis* above was reversed, the diverse reasons offered by the concurring justices for the reversal do not give rise to any new rule of law in this field. As observed editorially in the report of this case in 12 L. Ed. 2d 793, "The six justices voting for reversal were unable to agree upon an opinion in support of the decision." Even the epitomized decisions in the above report indicate five drastically different sets of reasons for either affirmance or reversal. The net result is, in respect of the constitutional aspects of the particular Ohio statute, that the definition of obscenity and the rule for its determination remains as laid down in the *Roth-Alberts cases* (*Roth* v. *United States*), 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, as follows: "* * * whether, to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest." This identical standard, subsequent to the decision of *Roth* above, was carried into the statutory law of Ohio and was the standard upon which the court below properly charged the jury in this case.

The appellant, in a variety of ways, by his assignments of error, raises the question of whether in this trial and in view of the evidence received the requirement that the defendant "knowingly" possessed an obscene book was satisfied. This *scienter* is a specific element of the offense. Without substan-

tial evidence in support of it, the conviction may not stand. See *Smith* v. *California*, 361 U. S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215; *City of Cincinnati* v. *Marshall*, 172 Ohio St 280; *State* v. *Wetzel*, 173 Ohio St. 16; *State* v. *Warth*, 173 Ohio St. 15; and *State* v. *Griffith*, 174 Ohio St 553.

On this question the Supreme Court of Ohio observed in its opinion in the *Jacobellis case* above (173 Ohio St. 22):

"A commercial possessor [such as the bookstore operator here] obviously can not be held to the duty of examining and determining for himself the obscenity of all matters which pass through his hands, neither, however, can he profess ignorance of that which has become a matter of general knowledge in the community. * * *

"Thus it is only when a holder of such matter becomes aware of or *should be aware of the contents* and the objectionable nature thereof that he would become liable to prosecution under this section." (Emphasis added.)

Accordingly, it becomes necessary to examine the evidence available to the jury in respect of "knowledge" to determine whether it was sufficient to justify by inference or otherwise the conclusion on the part of the jury that the defendant knowingly possessed the objectionable material.

The exhibit in question is a book called "Orgy Club." It is technically a novel; it was offered for sale in the defendant's store. An examination of it demonstrates conclusively that its dominant, if not sole, theme aside from a most tenuous plot deals with constant, casual and colorful fornication spiced here and there by bits of sadism.

The record shows the book was taken by police, after examination, from a display rack labelled "adults only." Whether this tag is a restriction or an invitation is unimportant. The store is small and crowded. The particular rack is within immediate reach of any part of it. The tag "adults only" obviously demonstrates a conscious classification of material on the part of the merchant. In addition to this, the exhibit was found in the midst of others hereinafter referred to which bear equally exotic titles and jackets announcing with crystal clarity that this is the sex, sin and sadism department. The titles obviously announce to the literary browser the sensational nature of the subject matter within arm's reach. This is recognized,

good merchandising practice whether the merchant is selling housewares, food, clothing or literary erotica. It becomes patently absurd, however, for the merchant to thus engage in sound selling practices on the one hand and disclaim any knowledge of the content or subject matter of his wares on the other hand.

An examination of the photograph exhibits shows some titles and jacket "art" of the books for sale along with "Orgy Club." The court is not going to compound, abet or promote the merchandising of the defendant by detailing the suggested erotica, nor is it saying that the discernible list of books is necessarily obscene, but it is saying that the dealer is obviously making an intelligent and purposeful classification of subject matter.

Defendant proffered in evidence, which proffer was properly refused by the court, various widely read and widely accepted literary publications dealing incidentally with sex in conceivably prurient aspects. He suggests that there is no difference between the proffered works and "Orgy Club" and its titled relatives. The very names of the books proffered contradict appellant's argument in this respect. In "Strange Fruit," "Memoirs of Hecate County," "From Here To Eternity," "Tortilla Flat," "A Rage To Live," "Brave New World," "Ulysses," "Daughters and Mothers," "Another Country," "The Tin Drum," "Lady Chatterley's Lover," there is no way in which the bare title could suggest to the ignorant or unwary book dealer the nature of the included subject matter, much less its dominant theme. They indicate on the surface no common subject matter and suggest little, if any, particular content.

The problem of the book dealer in attempting to screen the extensive output offered him for display and sale is recognized as a difficult one; however, it takes no effort whatsoever, during the course of a fifteen second reading either of the back cover or the front page of "Orgy Club," to indicate an appeal to pruriency as the dominant theme.

These aspects of the evidence received by the jury in this trial are more than sufficient to justify its necessary conclusion of "when a holder of such matter becomes aware of or should be aware of the contents and the objectionable nature thereof

that he would become liable to prosecution under this section," as stated on page 27 in *State* v. *Jacobellis* above.

This court finds itself in agreement with the words of Mr. Chief Justice Warren in *Jacobellis* v. *Ohio*, 378 U. S. 184, at 203, that "once a finding of obscenity has been made below under a proper application of the *Roth* test, I would apply a 'sufficient evidence' standard of review—requiring something more than merely any evidence but something less than 'substantial evidence on the record [including the allegedly obscene material] as a whole.' "

In this case the *Roth* test was properly given to the jury and apparently applied by it with, in addition, sufficient evidence before it that the defendant knew or should have been aware of the objectionable nature of the contents of the principal exhibit.

The court below properly overruled defendant's motion to suppress "Orgy Club" as evidence because of the manner of seizure by the arresting officers. They took the book in good faith as contraband after examination and after a determination that its possession then and there constituted a felony in being.

Defendant also complains of the simultaneous seizure of other and possibly similar items from his stock of merchandise. Certain of this additional material was offered in evidence by the state and refused by the court as being irrelevant and immaterial to the charge being tried. This was correct, and whatever property of the defendant was taken is not a part of the record of this case and its manner of taking is not in issue here. Whatever remedy the defendant may have for the alleged wrongful taking of his property, it is not the right to a new trial in this case.

Accordingly, the judgment below is hereby affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and LONG, J., concur.