Theodore A. POULOS, Jr., Plaintiff,

v.

Jack B. RUCKER, Commissioner of Public Affairs, Drue H. Lackey, Jr., Chief of Police, City of Montgomery, Ralph M. Hammonds, Detective, City of Montgomery, Defendants.

Civ. A. No. 2625–N.

United States District Court
M. D. Alabama, N. D.

July 10, 1968.

J. Paul Lowery, Montgomery, Ala., for plaintiff.

Ira DeMent, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

Plaintiff, the operator of a news and magazine stand in Montgomery, Alabama, seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, as to the obscenity, *vel non*, of certain publications [1] admittedly seized by the defendants in the enforcement or attemped enforcement of the Montgomery obscenity ordinance [2]

---

1. Triangle, Stud, Warped Desire, Gay Gay A Go-Go, Exotic Sentiment, Dolls A Go-Go.

2. Code of City of Montgomery, § 24–44:
 "(a) No person shall, with knowledge of its contents, send or cause to be sent, or bring or cause to be brought, into this city, for sale or commercial distribution, or in this city prepare, sell, exhibit or commercially distribute or give away or offer to give away, or have in his possession with intent to sell or commercially distribute or to give away or offer to give away, any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene.
 "(b) No person shall, with knowledge of its contents, have in his possession any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene.
 "(c) The following words, terms and phrases used in this section shall, for the purpose of this section, have the meaning respectively ascribed to them in this subsection (c):
 "(1) *Mailable matter.*
 "a. Printed or written matter or material having second class mailing

and as to certain other publications[3] plaintiff allegedly felt required to remove from his place of business under threat of criminal prosecution. Plaintiff further alleges that the seizure and the threat of seizure were arbitrary and constituted "on-the-spot" determinations by nonexpert police officials of the obscenity of the publications. Plaintiff seeks an injunction against further seizure of these materials and against further seizure of any materials using unconstitutional methods. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

Their motion to dismiss having been denied, the defendants joined issue in their answer and, in addition, counterclaimed, asking this Court (1) to determine that the publications submitted by plaintiff are obscene either when sold or distributed to adults or minors, or both, and (2) to enjoin the further sale or display of said publications either to adults or minors, or both. Defendants further cross-claim and ask for a determination of obscenity and an injunction against the further display, distribution and sale of certain additional publications.[4]

This cause is submitted upon the pleadings, the testimony of numerous witnesses and the library of exhibits submitted in connection with that testimony. This Court now proceeds to make appropriate findings of fact and conclusions of law.

It is now basic in our law that obscenity is not within the area of protected speech or press. Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498. However, "constitutionally protected expression * * * is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584. No single standard has yet been evolved for distinguishing protected from unprotected speech.

In cases where the sole issue is obscenity, *vel non,* Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515, states the controlling legal principles. After outlining the diverse views of the individual justices,[5] the

---

privileges under the laws of the United States; or

"b. Any other printed or written matter or material which has not been determined to be nonmailable under the laws of the United States.

"(2) *Obscene.* That which is lewd, lascivious, filthy and pornographic and, to the average person, applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interests.

"(3) *Printed or written matter or material.* Any book, pamphlet, magazine, periodical, newspaper, picture magazine, comic book, story book or other printed or written matter, but such term does not include written or printed matter or material used by or in any religious, scientific or educational institution."

3. Nite Out, Tigress, Wild Women, Slip and Garter, High Heels, Candid, Spanky, Knocker, Tease, Cine Femme, Sultry, Diamond, Stud, Meow, Sheer Hose, Ultra, Enchanted, Spree.

4. Nudist Times, Nudist Connoisseur, Sun Sport, Lesbianiana, Seize.

5. "Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their 'obscenity.' A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material. Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless '(a) the dominant theme of the material taken as a whole appeals to prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' * * *. A Book named 'John Cleland's Memoirs of a Woman of Pleasure' v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 418–419, 86 S.Ct. 975, 977–978 [16 L.Ed.2d 1]. Another Justice has not viewed the 'social value' element as an independent factor in the judgment of obscenity. Id., at 460–462, 86 S.Ct. 975, 998–999 (dissenting opinion)." (Footnotes omitted.)

Court held that "[w]hichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand." Redrup, supra at 771, 87 S.Ct. at 1416. One month after *Redrup* the Court reversed per curiam 13 state and federal court judgments finding material obscene without waiting for briefs and arguments.[6] The Court simply granted certiorari and reversed, citing *Redrup*. This Court interprets these decisions as indicating that it is indeed a rare book that, solely on the basis of its content, is not entitled to constitutional protection. The Ninth Circuit, Grant v. United States, 380 F.2d 748, and the Eighth Circuit, Luros v. United States, 389 F.2d 200 (slip opinion dated Feb. 7, 1968), have also taken this view of the recent cases.

This is not to say that the First and Fourteenth Amendments preclude all limitations on the distribution and sale of dirty, filthy and sordid books. The Court in *Redrup* noted that:

> "In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. See Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; cf. Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412. In none was there any suggestion of an assault upon individual privacy by publication in a manner *so* obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233; Public Utilities Comm'n

of District of Columbia v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068. And in none was there evidence of the sort of 'pandering' which the Court found significant in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31." Redrup, supra 386 U.S. at 769, 87 S.Ct. at 1415.

By clear implication, the presence of these issues would make a difference. The Supreme Court has recently reaffirmed its willingness to tolerate greater limitation when distribution to minors is involved. Ginsberg v. State of New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) upholds on its face a New York criminal obscenity statute which prohibits the sale to minors under 17 years of age of material defined to be obscene on the basis of its appeal to them, whether or not it would be obscene to adults.

Mr. Justice Stewart, concurring in Ginsberg, provides us with what should become a classic statement of the Court's present operative theory:

> "The First Amendment guarantees liberty of human expression in order to preserve in our Nation what Mr. Justice Holmes called a 'free trade in ideas.' To that end, the Constitution protects more than just a man's freedom to say or write or publish what he wants. It secures as well the liberty of each man to decide for himself what he will read and to what he will listen. The Constitution guarantees, in short, a society of free choice. Such a society presupposes the capacity of its members to choose." Id. at 1285 of 88 S.Ct. (Footnotes omitted.)

6. Keney v. New York, 388 U.S. 440, 87 S.Ct. 2091, 18 L.Ed.2d 1302 (1967); Friedman v. New York, 388 U.S. 441, 87 S.Ct. 2091, 18 L.Ed.2d 1303 (1967); Ratner v. California, 388 U.S. 442, 87 S.Ct. 2092, 18 L.Ed.2d 1304 (1967); Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); Books, Inc. v. United States, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967); Corinth Publications, Inc. v. Wesberry, 388 U.S. 448, 87 S.Ct. 2096, 18 L.Ed.2d 1310 (1967); Avansio v. New York, 388 U.S. 446, 87 S.Ct. 2093, 18 L.Ed.2d 1308 (1967); Rosenbloom v. Virginia, 388 U.S. 450, 87 S.Ct. 2095, 18 L.Ed.2d 1312 (1967); Cobert v. New York, 388 U.S. 443, 87 S.Ct. 2092, 18 L.Ed.2d 1305 (1967); Sheperd v. New York, 388 U.S. 444, 87 S.Ct. 2093, 18 L.Ed.2d 1306 (1967); Quantity of Copies of Books v. Kansas, 388 U.S. 452, 87 S.Ct. 2104, 18 L.Ed.2d 1314 (1967).

The Supreme Court, then, has increasingly been focusing on and giving content to "the liberty of each man to decide for himself what he will read and to what he will listen." Regulation limited to children may be justified on the theory that they lack the capacity for full choice. "Pandering," "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers," Roth v. United States, 354 U.S. 476, 495–496, 77 S.Ct. 1304, 1315 (concurring opinion), may still be regulated on the theory that it is conduct—conduct which ordinarily is not necessary to the effective choice of the reader. In such situations books are not on trial.

■ Having examined the material involved and listened to the testimony of qualified experts,[7] this Court concludes, on the basis of the authority outlined above, that none of the submitted material is obscene for adult readers. Rather, as to them, such material is entitled to the full protection of the First and Fourteenth Amendments to the Constitution. It follows that the Montgomery obscenity ordinance cannot be applied constitutionally to their sale or distribution to adults. That is the limit of this Court's holding on this issue. The ordinance was not attacked on its face. No issue of pandering was raised. Defendants did raise by their pleading the obscenity, vel non, of this material for minors. It was, however, the uncontradicted testimony of plaintiff that it is his policy not to sell to persons under 21 years of age, and that in furtherance of that policy he requires identification of any person of doubtful age. It would be premature, therefore, to resolve this issue about which there is not involved the "actual controversy" required by 28 U.S.C. § 2201. Nor would it be appropriate at this time to decide whether the ordinance as written could be applied constitutionally to the sale or distribution to minors of material found obscene

as to them. Suffice it to note that while the statute is not drawn to deal specifically with minors as was the one upheld in Ginsberg, it does borrow heavily from the language of Supreme Court opinions and could perhaps be judicially construed to include the concept of variable obscenity adopted in Ginsberg. It might very well be appropriate at this time for the Montgomery, Alabama, authorities—or the Alabama legislative authorities, to give some serious consideration, by appropriate ordinances or statutes, to implementing Ginsberg v. New York, supra, for the protection of minors.

Because defendants proceeded against materials found by this Court to be constitutionally protected, it becomes particularly important to examine the methods used by defendants in determining that the materials were not thus protected.

The evidence for this aspect of the case, by stipulation of the parties, is drawn primarily from a transcript of the proceedings in the case of The City of Montgomery v. Theodore A. Poulos in the Municipal Court for the City of Montgomery, Alabama.

Defendant Rucker testified that in his capacity as Commissioner of Public Affairs he was in charge of directing the policies of the City Police Department and that in that capacity he initiated a so-called clean-up campaign concerning alleged obscene literature on the newsstands of Montgomery. Defendant Lackey, the Chief of Police, superintended the execution of the enforcement program. Defendant Detective Hammonds was the operative agent behind the events leading to the arrest of plaintiff and the seizure of some 90 copies of five titles on October 30, 1967.

Defendant Hammonds testified that several days previous to the arrest he went to plaintiff's newsstand and examined a number of publications, including those seized. A subordinate testified that he received an interoffice

7. Including clinical psychologists, a criminologist, a variety of literary experts and experts on contemporary community standards.

memorandum instructing him to go to another bookstore (not Poulos') and purchase copies of the above-mentioned five titles, which he did. Detective Hammonds procured a warrant for plaintiff's arrest. No titles were specified in the warrant. At some subsequent point plaintiff was told that he must remove certain other titles or face criminal prosecution. At no time were any materials examined by a judicial official or any other attorney. Nor did the defendants solicit or receive any legal advice concerning criteria for distinguishing the obscene from the constitutionally protected. Defendant Hammonds stated that he was guided exclusively by the language of the city ordinance. Plaintiff quite correctly insists that:

"* * * the use of these warrants implicates questions whether the procedures leading to their issuance and surrounding their execution were adequate to avoid suppression of constitutionally protected publications.

' * * * [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. * * * The separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *.' Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech." Marcus v. Search Warrants of Property etc., 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed. 2d 1127 (1961). (Footnote omitted.)

The Supreme Court has spelled out rather clearly what procedures must be followed. In *Marcus* the evil struck down was the broad discretion given police officials to determine the character of the publications. The danger of such discretion is well illustrated by the case at bar. Detective Hammonds testified that in his opinion books which contain detailed descriptions of sexual intercourse are obscene and that he would ask even the Montgomery Public Library to remove all such books, including Lady Chatterley's Lover if it contained such passages.[8] It suggests no disrespect for competent police officers to insist that in this sensitive area decisions be made according to a more rigorous standard employed by more expertly trained hands.

The question of the necessity of a preliminary hearing of adversary quality, not reached in *Marcus*, was dealt with in A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the Court holding:

"It is our view that since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P–K was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient." Id. at 210, 84 S.Ct. at 1725.

This Court would agree with the summary of Judge Tyler:

"The common thread running through recent Supreme Court decisions on the seizure of allegedly obscene matter is that because the line between protected and unprotected speech is so difficult to draw, dissemination of a particular work should be completely undisturbed, at least until an independent determination of obscenity is made by a judicial officer. Complete restraint on any work must await a final judicial determination of obscenity." United States v. Brown, 274 F.Supp. 561, 563 (S.D.N.Y.1967).

The procedure adopted by defendants in this case is a classic prior restraint. Bantam Books v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584

8. It does, but it was declared not obscene in Grove Press, Inc. v. Christenberry, 276 F.2d 433 (2d Cir. 1960).

310

(1963). A Quantity of Copies of Books, supra, 378 U.S. at 211, 84 S.Ct. 1723.

 It is also clear that even in the absence of seizure, threats of criminal prosecution by police officers or other administrative officials can constitute an all too effective prior restraint. Bantam Books, Inc., supra 372 U.S. at 66–67, 83 S.Ct. 631. This is not to say, of course, that after a proper judicial determination of obscenity, the police may not "negotiate" for removal of the books rather than institute a criminal proceeding.

This Court's determination that the submitted materials are not obscene requires at the very least an order directing the return of the materials seized. This Court has been assured by counsel for the defendants that the determination and order as made and entered in this case will be followed and implemented in good faith and that it will not be necessary to issue an injunction in order to secure compliance. Accordingly, no injunction will be issued.

An order will be entered accordingly.