## PEOPLE v. BILLINGSLEY

1. APPEAL AND ERROR — CONSTITUTIONAL LAW — DUE PROCESS — OBSCENITY — INDEPENDENT REVIEW.

   An appellate court must make an independent review of the facts and an independent judgment where matters involving constitutional rights under the due process clause, such as whether a book is obscene in the constitutional sense, are at issue.

2. OBSCENITY—SEXUAL DIARIES.

   The United States Supreme Court has held that certain "sexual diaries," i.e., autobiographical accounts almost exclusively concerned with sexual incidents in the life of a protagonist and designed to appeal to the sexual appetites of the reader are not constitutionally obscene and are entitled to constitutional protection.

3. OBSCENITY—PROFANITY—VULGARITY.

   The quantity of profane and vulgar words in a publication or its unskilled and coarse style are not meaningful in determining whether the publication is constitutionally obscene where other publications, using less profanity, but conveying the same fundamental ideas, have been found to be entitled to constitutional protection by the United States Supreme Court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 16 Am Jur 2d, Constitutional Law §§ 341-350.
33 Am Jur, Lewdness, Indecency and Obscenity §§ 9-12.
Modern concept of obscenity. 5 ALR3d 1158.
Validity of procedures designed to protect the public against obscenity. 5 ALR3d 1214.

4. Constitutional Law—Communication—Ideas—Wording.

    The State may not limit the constitutional right to communicate ideas by assuming the right to prohibit the use of certain words, however offensive or odious, to communicate those ideas.

5. Constitutional Law—Obscenity—Sexual Diaries—Wording.

    The State cannot constitutionally differentiate between one sexual diary and another, where both communicate the same thoughts and images, according to the delicacy of the words chosen to convey those thoughts and images.

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 March 5, 1969, at Lansing. (Docket Nos. 5,544, 5,545, 5,546.) Decided October 30, 1969. Application for leave to appeal filed November 17, 1969.

Virgil Billingsley, Linda Schort and Floyd Bloss were convicted of the sale and possession for sale of obscene literature. Defendants appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Bruce A. Barton,* Prosecuting Attorney, for the people.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian,* for defendants.

Before: J. H. Gillis, P. J., and Levin and Bronson, JJ.

Levin, J. The defendants Billingsley, Schort and Bloss appeal their convictions of sale and possession for sale of obscene literature.[1] The charged offense concerned three books, "Pleasures and Follies", "Les Enfants Terribles", and "My Secret Life". The

---

[1] MCLA § 750.343a (Stat Ann 1954 Rev § 28.575[1]).

trial judge found that My Secret Life was not obscene and limited the jury's consideration to the other two books.

The defendants' main contention on appeal is that the two books are not obscene in the constitutional sense. The phrase "obscene in the constitutional sense" was coined by the United States Supreme Court.[2] It serves both to focus attention on the constitutional issue involved when the State seeks to suppress speech and to remind us of the paramount role of the United States Supreme Court in expounding the law of obscenity. The parties are in agreement that, in deciding whether these books, clearly obscene in the ordinary sense in which the word is used, are obscene in the constitutional sense, we are obliged to make a judgment independent of the jury's verdict.[3]

The two books are sexual diaries, *i.e.*, autobiographical accounts almost exclusively of sexual incidents in the life of the protagonist. The descriptions primarily concern normal heterosexual activity. There are, however, many descriptions of more exotic heterosexual and, in one of the two books, of homosexual activity.[4] The descriptions

---

[2] See *Redrup* v. *New York* (1967), 386 US 767, 769 (87 S Ct 1414, 18 L Ed 2d 515); *Memoirs* v. *Massachusetts* (1966), 383 US 413, 418 (86 S Ct 975, 16 L Ed 2d 1); *People* v. *Zerilli* (1968), 14 Mich App 513.

[3] In *Jacobellis* v. *Ohio* (1964), 378 US 184, 188, 189 (84 S Ct 1676, 12 L Ed 2d 793), the United States Supreme Court observed that in areas involving constitutional rights under the due process clause, the Court had "consistently recognized its duty to apply the applicable rules of law upon the basis of an independent review of the facts of each case. [Citations omitted.] And this has been particularly true where rights have been asserted under the First Amendment guarantees of free expression".

[4] There are, however, no masochistic or scatological episodes. Nor, with one exception, are there any sadistic episodes. The one sadistic episode appears in "Pleasures and Follies." It is brief and appears to have been added for purposes of contrast and as part of the author's asserted theme that the sexual activity described in his book is preferable to that represented in the works of the Marquis de Sade.

of particular sexual encounters are often protracted, repetitious and fanciful.

In *Memoirs* v. *Massachusetts* (1966), 383 US 413, 418 (86 S Ct 975, 16 L Ed 2d 1), the United States Supreme Court held that Massachusetts could not ban the sale of the sexual diary, "Fanny Hill". Three justices joined in the following statement:

"We defined obscenity in Roth[5] in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 US at 489 (77 S Ct at 1311, 1 L Ed 2d at 1509). Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Three justices concurred in the result, Justices Black and Douglas because in their view the State may not control the expression of ideas and Justice Stewart because in his opinion Fanny Hill is not "hard-core pornography."

On the same day that *Memoirs* was decided, the Court held that Ralph Ginzburg had been properly convicted of distributing obscene literature even if the material involved was not obscene[6] because the evidence showed that he had engaged in the "sordid business of pandering".[7] *Ginzburg* v. *United States*

---

[5] *Roth* v. *United States* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498).

[6] The Court expressly assumed, without deciding, that the material itself was not obscene.

[7] On the same day *Memoirs* and *Ginzburg* were decided, the Court rejected the argument that the prurient appeal ingredient was not present where the material did not appeal to the prurient interest

(1966), 383 US 463, 467 (86 S Ct 942, 16 L Ed 2d 31), *reh. den.* 384 US 934 (86 S Ct 1440, 16 L Ed 2d 536).

The Court's most recent statement is in its much-discussed *Redrup* opinion which held that various magazines and the books "Lust Pool" and "Shame Agent" were protected by the First and Fourteenth Amendments from State suppression. *Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed 2d 515). The opinion of the Court (signed by 7 justices) repeated, but declined to rest decision solely on, the *Roth-Memoirs* test; it adverted to the opinions of the justices who regard that test as too narrow a view of the First Amendment and con-cluded with the statement: "Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand." The *Redrup* opinion emphasized that no claim had been made that "the statute in question reflected a specific and limited state concern for juveniles", that there had not been "any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it", and that there was no "evidence of the sort of 'pandering' which the Court found significant in *Ginzburg* v. *United States*".

The United States Court of Appeals for the Eighth Circuit has observed that in *Redrup* "there is specific indication that a majority of the Supreme Court adopts standards 'not dissimilar' to banning

of an average person in sex (whose reaction might be one of disgust rather than the stimulation of his erotic interest) and ruled that it was enough that the material was designed for and primarily dis-seminated to a clearly defined, deviate sexual group. *Mishkin* v. *New York* (1966), 383 US 502 (86 S Ct 958, 16 L Ed 2d 56), *reh. den.* 384 US 934 (86 S Ct 1440, 16 L Ed 2d 535).

only 'hard-core' pornography.   Subsequent appli-
cation of *Redrup* gives no contraindication".[8]

On the authority of *Redrup* the United States
Supreme Court has reversed 19 decisions of lower
Federal and State courts.[9]   Some of these concerned
motion pictures, others magazines and still others
books.   The following books have been held not
obscene:

"Sex Life of a Cop."[10]   *Aday* v. *United States*
(1967), 388 US 447 (87 S Ct 2095, 18 L Ed 2d 1309).

"Orgy Club".[11]   *Mazes* v. *Ohio* (1967), 388 US 453
(87 S Ct 2105, 18 L Ed 2d 1315.

---

[8] *Luros* v. *United States* (CA 8, 1968), 389 F2d 200, 205.   Similarly,
see *Poulos* v. *Rucker* (DC Ala, 1968), 288 F Supp 305; *Common-
wealth* v. *Dell Publications, Inc.* (1967) 427 Pa 189 (233 A2d 840,
852–854; *People* v. *Noroff* (1967), 67 Cal 2d 791, 797 (63 Cal Rptr
575, 579, 433 P2d 479, 483); *In re Panchot* (1968), 70 Cal 2d 105,
108, 109 (73 Cal Rptr 689, 691, 448 P2d 385, 387).

[9] *Keney* v. *New York* (1967), 388 US 440 (87 S Ct 2091, 18 L
Ed 2d 1302); *Friedman* v. *New York* (1967), 388 US 441 (87 S Ct
2091, 18 L Ed 2d 1303); *Ratner* v. *California* (1967), 388 US 442
(87 S Ct 2092, 18 L Ed 2d 1304); *Cobert* v. *New York* (1967), 388
US 443 (87 S Ct 2092, 18 L Ed 2d 1305); *Sheperd* v. *New York*
(1967), 388 US 444 (87 S Ct 2093, 18 L Ed 2d 1306); *Avansino* v.
*New York* (1967), 388 US 446 (87 S Ct 2093, 18 L Ed 2d 1308);
*Aday* v. *United States* (1967), 388 US 447 (87 S Ct 2095, 18 L Ed
2d 1309); *Books* v. *United States* (1967), 388 US 449 (87 S Ct 2098,
18 L Ed 2d 1311); *A Quantity of Books* v. *Kansas* (1967), 388 US
452 (87 S Ct 2104, 18 L Ed 2d 1314); *Mazes* v. *Ohio* (1967), 388
US 453 (87 S Ct 2105, 18 L Ed 2d 1315); *Schackman* v. *California*
(1967), 388 US 454 (87 S Ct 2107, 18 L Ed 2d 1316); *Conner* v.
*City of Hammond* (1967), 389 US 48 (88 S Ct 234, 19 L Ed 2d
47); *Potomac News Co.* v. *United States* (1967), 389 US 47 (88 S
Ct 233, 19 L Ed 2d 46); *Central Magazine Sales, Ltd.* v. *United
States* (1967), 389 US 50 (88 S Ct 235, 19 L Ed 2d 49); *Chance* v.
*California* (1967), 389 US 89 (88 S Ct 253, 19 L Ed 2d 256); *I.
M. Amusement Corp.* v. *Ohio* (1968), 389 US 573 (88 S Ct 690, 19
L Ed 2d 776); *Robert-Arthur Management Corp.* v. *Tennessee, ex
rel. Canale,* (1968), 389 US 578 (88 S Ct 691, 19 L Ed 2d 777);
*Felton* v. *City of Pensacola* (1968), 390 US 340 (88 S Ct 1098, 19
L Ed 2d 1220); *Henry* v. *Louisiana* (1968), 392 US 655 (88 S Ct
2274, 20 L Ed 2d 1343).

[10] The contents of the books are described in some detail in the
district court opinion, *United States* v. *West Coast News Company,
Inc.* (WD Mich, 1964), 228 F Supp 171, and in the opinion of the
Court of Appeals (CA 6, 1966), 357 F2d 855.

[11] The contents of the book are characterized in *State* v. *Mazes*
(1965), 3 Ohio App 2d 90 (209 NE2d 496, 498),

"Lust Job".[12]  *Books, Inc.* v. *United States* (1967), 388 US 449 (87 S Ct 2098, 18 L Ed 2d 1311).

"Sin Hooked", "Bayou Sinners", "Lust Hungry", "Shame Shop", "Fleshpot", "Sinners Seance", "Passion Priestess", "Penthouse Pagans", "Shame Market", "Sin Warden", "Flesh Avenger". *A Quantity of Books* v. *Kansas* (1967), 388 US 452 (87 S Ct 2104, 18 L Ed 2d 1314).

"Sin Whisper". *Corinth Publications, Inc.* v. *Wesberry* (1967), 388 US 448 (87 S Ct 2096, 18 L Ed 2d 1310), post-*Redrup* but *Redrup* was not relied on in the Supreme Court opinion.[13]

"Pleasure was my Business". *Tralins* v. *Gerstein* (1964), 378 US 576 (84 S Ct 1903, 12 L Ed 2d 1033), pre-*Redrup*.

Other courts have held that similar publications are entitled to constitutional protection.[14]

We have read the two books involved in this case and compared them with some of the books held to be not obscene.[15]  Where we have not been able to obtain a book, we have relied on the description of its contents in the opinion of the court which was reversed by the United States Supreme Court.

All these sexual diaries, those before us and those that other courts, including the United States Supreme Court, have held to be not obscene, are fundamentally the same.  They are all designed to appeal to the sexual appetite of the reader.  Their overall format is identical.  The protagonist proceeds in-

---

[12] The contents of the books are described in some detail in *Books, Inc.* v. *United States* (CA 1, 1966), 358 F2d 935.

[13] The contents of the book are characterized in *Corinth Publications, Inc.* v. *Wesberry* (1966), 221 Ga 704 (146 SE2d 764, 768).

[14] *Grant* v. *United States* (CA 9, 1967), 380 F2d 748; *City of Chicago* v. *Universal Publishing & Distributing Corp.* (1966), 34 Ill 2d 250 (215 NE2d 251); *People* v. *Kimmel* (1966), 35 Ill 2d 244 (220 NE2d 203); *State* v. *Onorato* (1965), 3 Conn Cir 438 (216 A2d 859); *Poulos* v. *Rucker, supra*.

[15] See *State* v. *Onorato, supra*, pp 862, 864; *Grant* v. *United States, supra*.

satiably from one sexual incident to another to the exclusion of any other interest. The intimate descriptions of herculean performances portrayed in the diaries before us are similar in concept to descriptions of sexual incidents in several of the books which we examined that were held by the United States Supreme Court to be protected by the First and Fourteenth Amendments.

We have considered the fact that the two books before us liberally use vulgar words and are written in an unskilled and coarse style. The images produced in the theatre of the mind by the sexual diaries before us are, however, precisely the same as the mental images portrayed in the books found to be entitled to constitutional protection. The fact that considerably more profanity is used in the diaries before us to convey the same fundamental ideas, thoughts, and images, cannot be the basis of a meaningful, workable, constitutional distinction. The constitutional right to communicate ideas would be unduly limited if the State could take upon itself the right to prohibit the use of certain words, however offensive and odious they may be, to communicate those ideas.[16] The State cannot constitutionally

---

[16] *Cf. Grove Press, Inc.* v. *Christenberry* (CA 2, 1960), 276 F2d 433, 438, 439; *Zeitlin* v. *Arnebergh* (1963), 59 Cal 2d 901 (31 Cal Rptr 800, 813, 383 P2d 152, 165); *Grove Press, Inc.* v. *Gerstein* (1964), 378 US 577 (84 S Ct 1909, 12 L Ed 2d 1035), *reversing per curiam Grove Press, Inc.* v. *Gerstein* (Fla App, 1963), 156 So 2d 537; *United States* v. *One Book Called "Ulysses"* (DC NY, 1933), 5 F Supp 182, 183, 184; *State* v. *Onorato, supra,* pp 861, 862.

The objectionable words in the two books found by the jury to be obscene are used incessantly throughout My Secret Life which was found by the trial court to be not obscene. My Secret Life is a veritable encyclopedia of varied sexual episodes. A reader will find nothing (with the exception of the one episode referred to in footnote 4) in the two books condemned by the jury that he will not also find in My Secret Life. My Secret Life is supposed to be the sexual diary of a wealthy Victorian and was recently published (all 2400 pages in hard cover volumes and 696 pages in a paperback) by a well known publishing house and nationally distributed through reputable book sellers and at drug stores and news stands. The two condemned books were not published or sold under

differentiate between one sexual diary and another, both communicating the same thoughts and images, according to the delicacy of the words chosen to convey those thoughts and images. The exercise of the constitutional right does not depend on the author's euphemistic skill.

Reversed.

BRONSON, J., concurred.

J. H. GILLIS, P. J. (*concurring*). In my view these books are obscene. They are, however, in the same class as many others found not to be "obscene in the constitutional sense" by the United States Supreme Court.

I, therefore, concur in the results.

---

such a mantle of respectability. But surely the pornography of those who patronize "dirty bookstores" is to be judged (from a constitutional point-of-view) by the same standards which have justified the distribution of this pornographic work among the educated and the middle and upper classes.