23227.   CORINTH PUBLICATIONS, INC. v.
WESBERRY et al.

ARGUED DECEMBER 13, 1965—DECIDED JANUARY 18, 1966.

*Haas, Holland, Freeman, Levison & Gibert, Hugh W. Gibert, Stanley Fleishman,* for appellant.

*Arthur K. Bolton, Attorney General, Peyton S. Hawes, Jr., Assistant Attorney General,* for appellee.

GRICE, Justice. A proceeding declaring a book to be obscene brings about this appeal.

The litigation began when James P. Wesberry, Hubert L. Dyar and Marcus Calhoun, as members of the State Literature Commission, filed in the Superior Court of Muscogee County a petition seeking a declaration that a book entitled "Sin Whisper" is obscene. The petition recited that the Commission was created by Georgia Laws 1953, page 135, as amended by Georgia Laws 1958, page 391 and Georgia Laws 1964, page 161; and that the petition for declaratory judgment was brought pursuant to Georgia Laws 1945, page 137, as amended. It named the book, copy of which was attached, as defendant, and designated as respondents the author, Alan Marshall, the publisher, Corinth Publications, both of San Diego, California, and the retail seller and wholesale distributor, both of Columbus, Georgia.

The petition alleged that the Commission had "found the book to contain obscene material . . . [that it] is a literature of obscene, nature, composed almost entirely of obscene and repugnant passages devoted to lengthy and vivid accounts of preparation for and acts of sexual promiscuity and misbehavior between its main characters, and that when the entire book is taken or considered as a whole, it has as its predominant appeal prurient interests (i.e., a shameful or morbid interest in nudity, sex, or excretion), going substantially beyond the customary limits of candor in description or representation of such matters."

The prayers of the petition were: a finding of probable cause to believe such literature is obscene, an order for special hearing to show cause; service of the petition and such order; a hearing on the question of obscenity; an adjudication that the book is obscene; and general relief.

The trial court entered an order reciting that it appeared that there was probable cause to believe the literature was obscene, setting the matter for special hearing to determine whether it

was obscene and to show cause why it should not be adjudged obscene, and providing for service of the order.

Only the publisher, Corinth Publications, Incorporated, resisted the proceeding. It interposed an answer and demurrers making constitutional attacks on specified Georgia laws relating to obscenity. It also filed a demand for jury trial. The demurrers were overruled and the demand was refused.

The case proceeded to trial before the judge without a jury, and resulted in a judgment adjudicating that the book is obscene.

The respondent publisher enumerated the following as error: the overruling of its demurrers to the petition; the refusal to hold unconstitutional on their face designated Georgia laws relating to obscenity (Ga. L. 1953, p. 135; Ga. L. 1958, p. 391; Ga. L. 1963, p. 78; Ga. L. 1964, p. 161); the refusal of its demand for jury trial; and holdings in the judgment, in stated particulars, that the book is obscene.

■ We first consider the overruling of the respondent's demurrers to the petition.

(a) The initial attack is that Georgia Laws 1963, page 78, is unconstitutional upon its face because it violates freedom of the press as guaranteed by the State and Federal Constitutions. It is not necessary to recite the contentions thus made, because the attack is directed against the wrong target, and for that reason alone must fail. Georgia Laws 1963, page 78, is not involved here. It makes criminal certain conduct with reference to obscene matter and provides punishment therefor. This is a civil proceeding based on other statutes.

(b) The second ground of challenge is that the activities of the State Literature Commission, as prescribed by Georgia Laws 1953, page 135; Georgia Laws 1958, page 391; Georgia Laws 1964, page 161; and Georgia Laws 1963, page 78, supra, constitute prior censorship in violation of the freedom of press guaranties of the State and Federal Constitutions. This challenge cannot be sustained. As just pointed out, Georgia Laws 1963, page 78, supra, is not involved. Furthermore, the relevant statutes do not provide for any restraint or delay in the publication of literature, but authorize remedial action *after* publication.

(c) The third contention is that, in view of the first and

second, referred to above, the petition and the entire procedure should be declared null, void and of no effect. The rulings made in (a) and (b) control adversely here.

■ The enumeration of error complaining of the trial court's refusal to hold these statutes unconstitutional on their face is, in view of the rulings in Division 1, not meritorious.

■ The trial court's denial of the respondent's demand for a jury trial was not erroneous.

(a) As to the first basis relied upon, the right to jury trial under the Georgia Constitution (Art. VI, Sec. XVI, Par. I; *Code Ann.* § 2-5101), no such right is provided in the situation here. That Constitutional provision, "The right of trial by jury . . . shall remain inviolate . . ." guarantees only "those rights heretofore enjoyed at common law in civil and criminal cases. . ." *Porter v. Watkins,* 217 Ga. 73, 74 (121 SE2d 120). Since the proceeding here involved did not exist at common law, no right to trial by jury is afforded by this Constitutional provision.

(b) Neither was a jury trial required by any of the statutes relied upon here.

The 1964 amendment to the State Literature Commission Act (Ga. L. 1964, p. 161; *Code Ann.* § 26-6306a.1) authorizing a declaratory judgment as to obscene material, contains no right of trial by jury. In fact, the word "jury" does not even appear in that Act. The trial provided therein is by the court, instead of by a jury.

Nor does the Declaratory Judgments Act (Ga. L. 1945, p. 137; Ga. L. 1959, pp. 236, 237; *Code Ann. Ch.* 110-11) afford the right to jury trial in the instant proceeding. Reference in the petition to such statutes was not necessary.

The purpose of the declaratory judgment procedure created by such 1945 and 1959 statutes is to relieve from uncertainty and insecurity by providing prior guidance. It is not confined to any one area where such guidance is needed, and relief in addition to a declaration may be granted. In short, it is a general procedure.

The 1964 Act (Ga. L. 1964, p. 161), providing for an adjudication or declaration that literature is obscene, is a special pro-

cedure, independent of such general procedure. It amended, not the 1945 or 1959 declaratory judgment statutes, but those relating to the State Literature Commission. Ga. L. 1953, p. 135; Ga. L. 1958, p. 391. Its use is restricted to one area only, obscene literature.

It creates an expeditious remedy with special procedures designed to combat the problem of obscenity. It provides for such matters as in rem action against the literature itself, designation of respondents, preliminary examination and disposition, a hearing between 20 and 25 days hence, notice to defend, service by mail upon nonresident respondents, forthwith determination if in default, and adjudication that the matter is obscene. This procedure, as we construe the statute, provides a remedy administered only by the trial judge who makes the determination as to obscenity. It is an alternative remedy to that of injunction against obscene literature, which already existed by the 1953 and 1958 State Literature Commission statutes, supra, and which require the usual time procedures and a jury trial.

(c) Nor was a jury trial required here by the First, Seventh, or Fourteenth Amendment to the Federal Constitution or by the standards for judging obscenity enunciated by the United States Supreme Court. According to Roth v. United States and Alberts v. California, 354 U.S. 476 (77 SC 1304, 1 LE2d 1498 (1953)), the test of obscenity is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." P. 489. See also, Jacobellis v. Ohio, 378 U. S. 184 (84 SC 1676, 12 LE2d 793 (1964)). It is insisted that only by a jury trial can these standards be constitutionally ascertained.

This contention is not valid.

It is not supported by any holding by the Supreme Court of the United States. Support from that court is sought from several statements made in concurring or dissenting opinions in cases where no issue of jury trial was actually made. On the other hand, statements are found in concurring and dissenting opinions of that court which indicate the view that trial by jury is not necessary, i.e., that obscenity is a question of law not fact, that it is a mixed question of law and fact, that it is a

question of "constitutional judgment," and that an appellate court must in each case make its own independent judgment on the issue. See such cases as Roth and Alberts, 354 U.S. 476, supra; Manual Enterprises, Inc. v. Day, 370 U.S. 478 (82 SC 1432, 8 LE2d 639); Jacobellis v. Ohio, 378 U.S. 184, supra. For a comprehensive presentation of Supreme Court cases on obscenity, see United States v. Klaw, 350 F2d 155 (CCA 2).

Furthermore, insofar as we can ascertain, all appellate courts which have dealt with the issue of the right to jury trial in civil obscenity proceedings have ruled against them. Those courts apparently have not regarded as valid the contention made here that a jury is required by the Federal Constitution to ascertain community standards. See State of Kansas v. A Quantity of Copies of Books, 191 Kan. 13 (379 P2d 254) (reversed by Supreme Court of the United States upon other grounds, 378 U.S. 205 (84 SC 1723, 12 LE2d 809)); Rachleff v. Mahon, (Fla. App. 1960) 124 S2d 878; Gerstein v. "Pleasure Was My Business," (Fla. App. 1961) 136 S2d 8; Zeitlin v. Arnebergh, 59 Cal.2d 901 (383 P2d 152) (certiorari denied by the Supreme Court of the United States).

For the foregoing reasons, we conclude that there was no error in refusing the respondent's request for a jury trial.

■ The final enumeration of error is the judgment and decree declaring that the book in question is obscene. Such declaration is as follows:

"1. That the book entitled 'Sin Whisper' is composed substantially of lengthy, detailed, and vivid accounts of preparation for and acts of normal and abnormal sexual relations between and among its characters; and, 2. That the book taken and considered as a whole, has as its predominant appeal, the arousing of prurient interests in the average man of our national community; and, 3. That the book taken and considered as a whole has no redeeming literary or social value or importance; and, 4. That the book taken and considered as a whole goes substantially beyond the customary limits of candor in description and representation of its subject matter; and, 5. That the book, judged as a whole by Georgia Statutory Standards and Constitutional standards established by the United States Supreme Court, is obscene."

This adjudication is amply supported by the evidence. In our view, the book is filthy and disgusting. Further description is not necessary, and we do not wish to sully the pages of the reported opinions of this court with it.

We find no error in the proceedings.

*Judgment affirmed. All the Justices concur.*