ROBERT ARTHUR MANAGEMENT CORP., Appellant,

*v.*

STATE OF TENNESSEE ex rel. PHIL M. CANALE, JR.,
District Attorney General, Appellee.

414 S.W.2d 638.

(*Jackson*, April Term, 1966.)

Opinion filed March 27, 1967.

Petition for Rehearing Denied May 15, 1967.

FRIERSON M. GRAVES, JR., of counsel, HEISKELL, DONELSON, ADAMS, WILLIAMS & WALL, Memphis, for appellant.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Assistant Attorney General, Nashville, for the State; SAM J. CATANZARO, and JESSE CLYDE MASON, Assistant District Attorneys General, Memphis, prosecuted the case for the State in the trial court.

MR. JUSTICE DYER delivered the opinion of the Court.

The constitutionality of a statutory scheme prohibiting obscene materials, by use of the injunctive process, is at issue here. This statute, enacted by Chapter 93 of the Public Acts of 1965, is now carried in Tennessee Code Annotated as Sections 39-3005, 39-3006 and 39-3007. Under this statute the Criminal Court of Shelby County found the motion picture film ''Mondo Freudo'' and an advertising trailer ''Olga's Girls'' to be obscene. The appeal here is by the exhibitor of the film and trailer, Robert-Arthur Management Corporation.

Under the Constitution of the United States obscenity is excluded from constitutional protection since

it is utterly without redeeming social importance. *Alberts v. State of California,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Jacobellis v. State of Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Likewise under the Constitution of the State of Tennessee obscenity has no protection. Also motion picture films are within the basic protection of the First and Fourteenth Amendments to the Constitution of the United States. *Kingsley International Picture Corp. v. Regents of University of State of New York,* 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). We make these statements, not to decide the issues before us, but to clearly define the issues raised.

■ The first constitutional objection to this statute is on the ground it allows restraint of the alleged obscene material prior to an adversary hearing on the underlying issue. This statute does allow prior restraint since it allows a temporary injunction. The seriousness of this issue is expressed by the United States Supreme Court in *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 wherein it was said, "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."

The statute at issue, where a temporary injunction has been issued, makes mandatory a trial on the issue of obscenity within two days after joinder of issues and a final decision of the court within two days after the conclusion of the trial. This statute, on the issue of prior restraint, is almost identical with the New York statute, on the same subject, dealt with by the United States Supreme Court in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The New

York statute required trial within one day after joinder of issue and a decision within two days of the conclusion of the trial. The court in *Kingsley Books* upholding the validity of the statute said:

> Neither in the New York Court of Appeals, nor here, did appellants assail the legislation insofar as it outlaws obscenity. The claim they make lies within a very narrow compass. Their attack is upon the power of New York to employ the remedial scheme of sec. 22-a. Authorization of an injunction pendente lite, as part of this scheme, during the period within which the issue of obscenity must be promptly tried and adjudicated in an adversary proceeding for which "adequate notice, judicial hearing, and fair determination" are assured, * * *, is a safeguard against frustration of the public interest in effectuating judicial condemnation of obscene matter. It is a brake on the temptation to exploit a filthy business offered by the limited hazards of piecemeal prosecutions, sale by sale, of a publication already condemned as obscene * * * Resort to this injunctive remedy, it is claimed, is beyond the constitutional power of New York in that it amounts to a prior censorship of literary product and as such is violative of that freedom of thought, and speech which had been "withdrawn by the Fourteenth Amendment from encroachment by the states."

*　*　*　*　*　*

The judicial angle of vision in testing the validity of a statute like sec. 22-A is "the operation and effect of the statute in substance." Id. 283 U.S. at 713, 51 S.Ct. at page 630. The phrase "prior restraint" is not a self-wielding sword. Nor can it serve as a talismanic test. The duty of closer analysis and critical judgment in

applying the thought behind the phrase has thus been authoritatively put by one who brings weighty learning to his support of constitutionally protected liberties. "What is needed," writes Professor Paul Freund, "is a pragmatic assessment of its operation in the particular circumstances. The generalization that prior restraint is particularly obnoxious in civil liberties cases must yield to more particularistic analysis." 354 U.S. 441, 77 S.Ct. 1328.

The case of *Freedman v. State of Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) dealt with statutes creating a State Board of Censors. On the issue of prior restraint the requirement to submit a film to a censor, prior to exhibiting same, is analogous to a temporary injunction prohibiting the showing of the film. In both cases there is some restraint prior to an adversary hearing on the underlying issue. In the *Freedman* case the Court said:

> The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. * * * Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. 380 U.S. 58, 85 S.Ct. 739.

■■ The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth, in effect guarantees to the people the right of free expression in order that there may be

a full and unrestricted interchange of ideas for bringing about any political and social changes desired by the people. This amendment gives protection to all ideas, no matter how unorthodox or controversial, so long as they have the slightest redeeming social importance. What we are weighing here is the right of the State to maintain a decent society against the right of individuals to express themselves freely. In doing so we move in a sensitive area. The issue here is whether this statute, by its operation and effect, has adequate procedural safeguards to properly protect, in this sensitive area, against constitutionality protected expression. We think this statute provides such adequate safeguards for the following reasons.

First: The State (acting through a district attorney-general) carries the burden to show the material sought to be proscribed is not material protected by the First Amendment to the Constitution of the United States. Second: The trial judge can exercise an independent check on the judgment of the district attorney-general at a point before any restraint takes place. Third: Upon issuance of a temporary injunction the date of joinder of issues is within the discretion of the party charged. Under this statute it is possible (though we admit not probable) to have the entire matter, including a decision on the underlying issue, fully disposed of within four days. This limits the status quo for the shortest possible time.

█ Error is assigned to the action of the trial judge in allowing State witnesses to be qualified relative to local (Shelby County, Tennessee) contemporary community standards rather than national contemporary community standards. In the leading case of *Roth v.*

*United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) the test of obscenity is stated to be "whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." The issue is whether "community" as the word is used in determining standards of decency means the local standard as opposed to the national standard. Since the suppression of freedom of expression must pass muster of a Federal Constitution the standards used to determine obscenity must of necessity be the national standard. *Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed. 2d 793 (1964); *State v. Vollmar*, 389 S.W. 2d 20 (Mo.1965).

■■ When the first State witness was offered objection was made to his testimony unless it could be shown he had knowledge of the standards of decency based on the national standard. The trial judge, overruling the objection, stated it was relevant to know the local standard and it might also be relevant to know the national standard. This witness to show his knowledge of the standards of decency, among other things, stated: (1) he normally viewed television and some movies; (2) he had seen stage shows in Chicago and New York City; (3) he read books and novels; (4) he had been a reporter and photographer on a local daily newspaper for eight years; and (5) he had knowledge national magazines and paper back books dealing with sex were on sale at newsstands. We think from these facts it could be found this witness had knowledge of the national standards of decency. Upon completion of this witness' testimony the trial judge asked him if he had any reason to believe the local standards would be any different from the national standard. The wit-

110

ness did not give a direct affirmative or negative answer to this question but did state in substance he thought the feelings of the local people on this matter, taking a large cross-section of the local community, would be the same as a large cross-section of the national community. We think, under this evidence, the trial judge could find the local standards of decency were essentially the same as the national standard. Further the trial judge viewed the films and his findings do not indicate he used local standards of decency.

We think and so hold that where it is shown the local standards of decency are essentially the same as the national standards, then it is not error to qualify a witness relative to local community standards.

The temporary injunction, when first issued, enjoined Robert-Arthur Management Corporation from further showing of the film "Mondo Freudo" or any other film or trailer. Insofar as this injunction applied to "any other film or trailer" it was in error. The operation and effect of this was to prohibit the showing of future films and when the statute here at issue is applied in this manner it is an unconstitutional application of the statute. *Kingsley Books v. Brown,* supra. Counsel for Robert-Arthur Management Corporation, on the same day the temporary injunction was issued, entered a motion to correct the injunction and have it apply only to the film "Mondo Freudo." The trial judge, in chambers, immediately made this correction. Under these facts we think the error was harmless error.

We find the statute here in question to be valid statute both under the Constitution of the State of Tennessee and under the Constitution of the United States;

and we also find this statute, in the case at bar, was not applied in an unconstitutional manner.

The exhibitor of the film here in question challenges the finding of the trial judge that the film "Mondo Freudo" was in fact obscene. The statute in question defines obscene material as follows:

Obscene material: Any material, matter, object or thing including but not limited to, any written or printed matter, film, picture, drawing, or any object or thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if in addition, (a) it is patently offensive to the public or if it goes substantially beyond customary limits of candor in describing or representing such matters, and (b) it is devoid of any literary, scientific or artistic value and is utterly without social importance. The phrase "predominant appeal" shall be considered with reference to ordinary persons. T.C.A. 39-3007.

Under the above statute there are three separate elements which must be found, independently of each other, to support a finding a material is obscene. For example, if a material have only modicum of social value, then such material cannot be found obscene even though it be patently offensive to the public. *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of the Commonwealth of Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). The trial judge applied these three elements independently in finding this film to be obscene.

Since this case was tried without a jury the scope of review here is governed by T.C.A. 27-303 and 27-304, which makes any issue of law or fact tried here de novo upon the record of the trial court accompanied by a presumption of the correctness of the judgment of the trial court, unless the preponderance of the evidence is otherwise. *Kernodle v. Peerless Life Ins. Co.*, 213 Tenn. 631, 376 S.W.2d 744 (1964).

The State offered six witnesses all residents of Shelby County, Tennessee consisting of an investment salesman, personnel director of a hospital, two housewives, a real estate salesman and a medical doctor. The testimony of these witnesses was substantially the same. They all testified, under the three elements set out in T.C.A. 39-3007, the films in question were obscene.

The Robert-Arthur Management Corporation offered as witnesses two officers of the corporation one residing in Atlanta, Georgia and the other in New Orleans, Louisiana; a psychiatrist and a psychologist both residents of Memphis, Tennessee; a theatre manager residing in Memphis, Tennessee; a movie reviewer residing in Atlanta, Georgia; a booking agent residing in Atlanta, Georgia; and a lawyer residing in Memphis, Tennessee. The testimony of these witnesses was on all points in direct conflict with the witnesses offered by the State.

The film "Mondo Freudo" was entered in evidence and seen by the trial judge. There was also a stipulation the movie "Mondo Freudo" had already played in some sixty-five other cities through the United States.

We have reviewed the evidence and have seen the film. We agree with the trial judge. This film, considered as a whole, not only predominantly appeals to

the prurient interest; in fact it has no other possible appeal. If this film is not patently offensive to the public or does not go substantially beyond customary limits of candor in dealing with sex, then we do not think it possible to make such a film. Under the third element necessary in a finding of obscenity witnesses for the exhibitor testified the film informed people of certain existing conditions. This film does inform people sexual filth exists in the world. We presume the argument to be, since sexual filth does exist, and this film only informs people of such, then the film is not obscene. If this be the argument we reject such. The effect of the film is just to add to the sexual filth already in the world. We find the film to be devoid of any literary, scientific or artistic value and utterly without social importance.

We have considered all the assignments of error and find them without merit. The judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.

### Opinion on Petition to Rehear

Appellant, Robert-Arthur Management Corporation, has filed a courteous and sincere petition to rehear. This petition does not raise any issue or cite any authority not given careful consideration in preparation of our original opinion. The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.