## STATE v. MELVIN LEE HOYT.
## STATE v. JOSEPH S. LEE.*

174 N. W. (2d) 700.

February 6, 1970—Nos. 41177, 41436.

*Stacker, Silverstein, Burke & Radsom* and *Thomas J. Burke,* for appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *Joseph P. Summers,* Corporation Counsel, and

---

* Reversed, 399 U. S. 524, 90 S. Ct. 2241, 26 L. ed. (2d) 782.

*Daniel A. Klas,* Special Assistant Corporation Counsel, for respondent.

MURPHY, JUSTICE.

These appeals arise out of convictions for the sale of obscene books by clerks employed at 480 Wabasha Street in the city of St. Paul. Because the principal issues are identical, the cases have been consolidated for oral argument and disposition by this court.

Defendant Melvin Hoyt was charged with having sold three obscene books on August 31, 1967, *The Way of a Man with a Maid, Adam and Eve,* and *Business as Usual.* Defendant Joseph Lee was charged with having sold two obscene books on January 8, 1968, *Lady Susan's Cruel Lover* and *True Love Stories of Growing Up.* The complaints allege that the sales were in violation of Minn. St. 617.241.

Defendants were tried separately by the municipal court of the city of St. Paul without a jury and each was convicted, defendant Hoyt on November 21, 1967, and defendant Lee on May 15, 1968. Each was fined $100, the maximum penalty permitted for a misdemeanor.[1]

The issues raised in the two appeals are (1) whether the state has the burden of proving by qualified witnesses the elements of obscenity specified in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General, 383 U. S. 413, 86 S. Ct. 975, 16 L. ed. (2d) 1; (2) whether it was error to exclude other books offered by defendant Lee to establish contemporary community standards; and (3) whether as a matter of law under the tests established by Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. (2d) 515, and subsequent decisions of the United States Supreme Court citing that case, the First Amendment of the United States Constitution requires a reversal.

---

[1] In each instance the trial court treated the multiple sales as a single offense pursuant to Minn. St. 609.035.

Section 617.241 under which defendants were convicted was adopted in 1961 and provides as follows:

"It is unlawful for any person knowingly to exhibit, sell, print, offer to sell, give away, circulate, publish, distribute, or attempt to distribute any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene. 'Obscene' for the purpose of this section, is defined as follows: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests.

"Any person violating any provision of this section shall be fined not less than $20 nor more than $100 for each offense."

It may be assumed that this statute was drafted to embody the rules enunciated by the United States Supreme Court in Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. (2d) 1498, where it was held that obscenity is not within the area of constitutionally protected speech or free press and defines it as follows (354 U. S. 489, 77 S. Ct. 1311, 1 L. ed. [2d] 1509):

"* * * [W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

From an examination of the material which is the subject of these prosecutions, we conclude that the convictions should be affirmed. In light of the case law,[2] the dominant theme of the

---

[2] See, State v. Oman, 261 Minn. 10, 110 N. W. (2d) 514; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 40 L. ed. 606; Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. (2d) 1498; Kingsley Books Inc. v. Brown, 354 U. S. 436, 77 S. Ct. 1325, 1 L. ed. (2d) 1469; Smith v. California, 361 U. S. 147, 80 S. Ct. 215, 4 L. ed. (2d) 205; Manual Enterprises, Inc. v. Day, 370 U. S. 478, 82 S. Ct. 1432, 8 L. ed. (2d) 639; Jacobellis v. Ohio, 378 U. S. 184, 84 S. Ct. 1676, 12 L. ed. (2d) 793; A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney

material appeals to the prurient interest of the average person and, applying contemporary community standards, is patently offensive and utterly without redeeming social importance. It is not entitled to First Amendment Protection under any rule or standard.

It is unnecessary to discuss the details of these books further than to observe that the theme of each is pointless save as it serves to relate the characters to repeated accounts of lewd and degrading episodes. They deal with filth for the sake of filth.

In answer to the appellants' assertion that the convictions are unsupported by evidence bearing upon the social value of the books and their acceptance by community standards, we can only say that such evidence would add nothing. The material speaks for itself. If it is not obscene, the word has lost all meaning. We identify it for what it is and hold that it is obscene as a matter of law.

Affirmed.

OTIS, JUSTICE (dissenting).

The decision of the United States Supreme Court which now appears to govern prosecutions for obscenity is Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. (2d) 515, and its companion cases. Redrup is significant not only because there is a redirection of emphasis on the elements of obscenity but be-

General, 383 U. S. 413, 86 S. Ct. 975, 16 L. ed. (2d) 1; Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. ed. (2d) 31; Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. (2d) 515; Kahm v. United States (5 Cir.) 300 F. (2d) 78; Klaw v. Schaffer (2 Cir.) 251 F. (2d) 615, affirming Id. (S. D. N. Y.) 151 F. Supp. 534; Parmelee v. United States, 72 App. D. C. 203, 113 F. (2d) 729; United States v. Levine (2 Cir.) 83 F. (2d) 156; United States v. One Book Called "Ulysses" (2 Cir.) 72 F. (2d) 705, affirming Id. (S. D. N. Y.) 5 F. Supp. 182; United States v. Dennett (2 Cir.) 39 F. (2d) 564; United States v. Kennerley (S. D. N. Y.) 209 F. 119; State v. Vollmar (Mo.) 389 S. W. (2d) 20; Adams Theatre Co. v. Keenan, 12 N. J. 267, 96 A. (2d) 519; People v. Muller, 96 N. Y. 408, 48 Am. R. 635; City of Cincinnati v. King (Mun. Ct.) 11 Ohio O. (2d) 433, 168 N. E. (2d) 633.

cause of the reliance placed on the decision in a long series of per curiam reversals which have occurred subsequently. In reversing criminal convictions, which had been affirmed by appellate courts of New York and Kentucky, and a judgment ordering the destruction of certain magazines, which had been affirmed by the Supreme Court of Arkansas, the court in Redrup stated with respect to those decisions (386 U. S. 769, 87 S. Ct. 1415, 18 L. ed. [2d] 517):

"In none of the cases was there a claim that the statute in question reflected a specific and limited state concern for juveniles. * * * In none was there any suggestion of an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. * * * And in none was there evidence of the sort of 'pandering' which the Court found significant in Ginzburg v. United States, 383 U. S. 463."

The divergent attitudes of members of the Supreme Court were noted in a succinct per curiam opinion, but the court concluded that whatever constitutional view was brought to bear on the cases it was clear the judgments could not stand. Only Mr. Justice Harlan and Mr. Justice Clark dissented. A review of the material approved in Redrup, and in the subsequent cases which summarily reversed convictions on the basis of Redrup, persuades me that however offensive I find the books on which we are passing judgment in the instant case, we cannot, consistent with our duty to apply the Constitution as construed by the United States Supreme Court, sustain these convictions.

### Pre-Redrup Decisions

Ten years ago, the Supreme Court reversed the New York Court of Appeals in Kingsley International Pictures Corp. v. Regents, 360 U. S. 684, 79 S. Ct. 1362, 3 L. ed. (2d) 1512, holding that the state could not deny a license to show the motion picture "Lady Chatterley's Lover" merely because the picture represented that adultery under certain circumstances may be proper

behavior. Thereafter, in Manual Enterprises, Inc. v. Day, 370 U. S. 478, 82 S. Ct. 1432, 8 L. ed. (2d) 639, the court had occasion to pass on the application of a Federal statute prohibiting shipment of obscene material through the mail. Some of its observations foreshadowed recent decisions which I believe govern. The court said the magazines were not so offensive on their face as to affront current community standards of decency, which it equated with patent offensiveness or indecency, citing as follows A. L. I., Model Penal Code, Proposed Official Draft (May 4, 1962) § 251.4(1), which it had approved in Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. (2d) 1498:

"Material is obscene if, considered as a whole, its predominant appeal is to prurient interest * * * and if *in addition* it goes substantially beyond customary limits of candor in describing or representing such matters." (Italics supplied.)

Under the Federal statute, the court said, there must be proof of both patent offensiveness and prurient appeal before the material may be found obscene. It went on to indicate that the test was a national standard of decency. In addition, the court made reference to, but did not decide, whether Roth v. United States, *supra,* and its other decisions were aimed only at hard-core pornography and concluded by noting (370 U. S. 490, 82 S. Ct. 1438, 8 L. ed. [2d] 648):

"* * * [T]he most that can be said of [the magazines] is that they are dismally unpleasant, uncouth, and tawdry. But this is not enough to make them 'obscene.'"

The rules governing obscenity were expanded in Jacobellis v. Ohio, 378 U. S. 184, 84 S. Ct. 1676, 12 L. ed. (2d) 793. There the state court held a French moving picture to be obscene, and the Supreme Court reversed. In so doing, it rejected the argument that the question of obscenity is a purely factual judgment on which a jury's verdict is all but conclusive. Obscenity was said to be a matter of constitutional law which has to be decided by a court. The majority emphasized that obscenity is excluded from

the constitutional protection only because it is " 'utterly' without redeeming social importance." Again, the court cited and approved A. L. I., Model Penal Code, in emphasizing the necessity for a finding that the material "goes substantially beyond customary limits of candor in describing or representing such matters." 378 U. S. 191, 84 S. Ct. 1680, 12 L. ed. (2d) 800. It applied to a state law the rule that "contemporary community standards" means a national community and not a local community. In concluding, the court suggested (378 U. S. 195, 84 S. Ct. 1682, 12 L. ed. [2d] 802):

"* * * State and local authorities might well consider whether their objectives in this area would be better served by laws aimed specifically at preventing distribution of objectionable material to children, rather than at totally prohibiting its dissemination."

On the same date, the Supreme Court reversed a Florida decision which held *Tropic of Cancer* obscene. Grove Press, Inc. v. Gerstein, 378 U. S. 577, 84 S. Ct. 1909, 12 L. ed. (2d) 1035, reversing Grove Press, Inc. v. State ex rel. Gerstein (Fla. App.) 156 So. (2d) 537.

In 1966, the court attempted to summarize and clarify its previous decisions in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" [Fanny Hill] v. Attorney General, 383 U. S. 413, 418, 86 S. Ct. 975, 977, 16 L. ed. (2d) 1, 5. There the court said that under its Roth definition of obscenity—

"* * * three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The court held that the Massachusetts court had erred in holding that a book need not be "unqualifiedly worthless before it can be

deemed obscene." The correct rule was held to be (383 U. S. 419, 86 S. Ct. 978, 16 L. ed. [2d] 6):

"* * * A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive."

A new note was introduced in the test of obscenity by the court's emphasis on the circumstances of production, sale, and publicity (383 U. S. 420, 86 S. Ct. 978, 16 L. ed. [2d] 7):

"* * * Evidence that the book was commercially exploited for the sake of prurient appeal, to the exclusion of all other values, might justify the conclusion that the book was utterly without redeeming social importance. * * * All possible uses of the book must therefore be considered, and the mere risk that the book might be exploited by panderers because it so pervasively treats sexual matters cannot alter the fact * * * that the book will have redeeming social importance * * *."

On the same date, the court decided Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. ed. (2d) 31. In Ginzburg, the court upheld a conviction under the Federal obscenity laws because of the evidence of pandering to which it had made reference in the Fanny Hill case. The court said that circumstances of presentation and dissemination of material claimed to be obscene were relevant to the issue of social importance. The court concluded (383 U. S. 475, 86 S. Ct. 950, 16 L. ed. [2d] 41):

"* * * Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation."

In dissenting, Mr. Justice Stewart, without attempting to define hard-core pornography, articulated his concept with the follow-

ing illustration (383 U. S. 499, note 3, 86 S. Ct. 957, note 3, 16 L. ed. [2d] 54, note 3):

"* * * Such materials include photographs, both still and motion picture, with no pretense of artistic value, graphically depicting acts of sexual intercourse, including various acts of sodomy and sadism, and sometimes involving several participants in scenes of orgy-like character. They also include strips of drawings in comic-book format grossly depicting similar activities in an exaggerated fashion. There are, in addition, pamphlets and booklets, sometimes with photographic illustrations, verbally describing such activities in a bizarre manner with no attempt whatsoever to afford portrayals of character or situation and with no pretense to literary value. All of this material * * * cannot conceivably be characterized as embodying communication of ideas or artistic values inviolate under the First Amendment * * *."

In a companion case, Mishkin v. New York, 383 U. S. 502, 86 S. Ct. 958, 16 L. ed. (2d) 56, a New York conviction for hiring others to produce obscene books and possessing them with the intent to sell them was upheld. The material depicted heterosexual and homosexual relations as well as sado-masochism and fetishism. Again, Mr. Justice Stewart dissented, stating (383 U. S. 518, 86 S. Ct. 969, 16 L. ed. [2d] 67):

"* * * However tawdry those books may be, they are not hard-core pornography, and their publication is, therefore, protected by the First and Fourteenth Amendments."

### The Trials

At the trial of defendant Hoyt, an officer of the St. Paul Police Department testified that on August 31, 1967, he entered a bookstore at 480 Wabasha Street and purchased from defendant three paperback books for $2.50 each, entitled *Adam and Eve, Business as Usual,* and *The Way of a Man with a Maid.* A sergeant in the vice unit was asked if he had an opinion as to whether or not the books were obscene. Defendant objected on the ground there was

no proper foundation. He was overruled. The officer thereupon testified that in his opinion the books were obscene. The state rested and defendant moved for dismissal on the ground no prima facie case had been presented. The motion was denied and defendant rested.

In the prosecution of defendant Lee, a member of the vice unit of the St. Paul Police Department testified that on January 8, 1968, at 480 Wabasha Street, he purchased from defendant two books for which he paid $2.50 and $3, entitled *Lady Susan's Cruel Lover* and *True Love Stories of Growing Up*. Because the officer had read only portions of the books, objection was sustained to his testifying as to whether or not in his opinion they were obscene. Thereupon, the state rested without further testimony. Defendant Lee moved for dismissal on the ground the state had failed to prove a case. The motion was denied.

As part of defendant's case, counsel attempted to show contemporary community standards by reference to other books purchased in a number of well-known bookstores in the same metropolitan area at about the same time. He offered in evidence *Fanny Hill* and books entitled *My Secret Life, Crazy Wild,* and *Busy Bodies*. Objection by the state was sustained. Defendant then rested.

### Expert Testimony

The question of whether a finding of obscenity by a court or jury can be sustained without evidence bearing on the elements prescribed by the United States Supreme Court has not yet been determined by that court. The state seizes on isolated statements taking the position that the issue of obscenity is one which a trier of the fact may decide without supporting evidence. In Kingsley Books, Inc. v. Brown, 354 U. S. 436, 448, 77 S. Ct. 1325, 1331, 1 L. ed. (2d) 1469, 1478, Mr. Justice Brennan in a dissent said:

"The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore provides a peculiarly

competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards."

In an opinion dissenting in part in Smith v. California, 361 U. S. 147, 171, 80 S. Ct. 215, 228, 4 L. ed. (2d) 205, 221, Mr. Justice Harlan said he did not believe that opinion testimony of experts was obligatory but he was of the view that obscenity could be established by other means. However, he advocated granting a new trial because the lower court had failed to permit any evidence of contemporary community standards.

A number of state and Federal courts have held that except in rare cases obscenity cannot be established without competent testimony. A leading decision in this area is Dunn v. Maryland State Bd. of Censors, 240 Md. 249, 213 A. (2d) 751. The lower court there found a motion picture was obscene and denied permission to show it. The Maryland Court of Appeals reversed. It held that the State Board of Censors had not sustained its burden of proof by merely offering the film in evidence. The court observed that without enlightening testimony neither the trial court nor the appellate court was qualified to determine whether the material exceeded constitutional standards. Although the appellate court found the picture "tiresome, boring, cheap, often vulgar and sometimes revolting," it felt that neither it nor the trial court was competent to determine whether to the average person applying contemporary community standards the dominant theme was an appeal to prurient interest. 240 Md. 257, 213 A. (2d) 755. Nor would the court pass on whether the picture exceeded customary limits of candor in its representations of sex, or whether it was utterly without redeeming social importance or literary or artistic value.

A Federal court took a similar approach in United States v. Klaw (2 Cir.) 350 F. (2d) 155, 167, suggesting that to rely on the material itself was an inappropriate resort to the doctrine of res ipsa loquitur. There, the court condemned the process of

permitting jurors to use their own reactions as the community standard without testimony of what does or does not appeal to the prurient interest of the average person. Such an approach, the court felt, would permit a conviction merely because the material was undesirable, distasteful, and disgusting.

In City of Phoenix v. Fine, 4 Ariz. App. 303, 420 P. (2d) 26, the Arizona Court of Appeals dismissed a civil action to enjoin the sale of material found to be obscene where only the material was in evidence. In this posture, the court held that the trial judge's decision would have to be based on either his own personal views or on his independent research in the field of psychology, literature, or sociology. This the court condemned as a kind of hidden judicial notice which would give the parties no opportunity to examine the source material in an adversary manner.

The Oklahoma Supreme Court in Ramirez v. State (Okla. Cr.) 430 P. (2d) 826, reached a similar conclusion. There the only evidence of obscenity in a criminal prosecution tried to a jury was a film claimed to be offensive. This left the jury free to speculate on the elements of obscenity, the court held. As in United States v. Klaw, *supra,* the Oklahoma court rejected a res ipsa loquitur approach. The fact that the film may have impressed the jury as trash, undesirable, and disgusting did not establish the proof adequate to sustain a conviction. Without evidence relative to contemporary community standards relating to social importance, the court held as a matter of law there was not sufficient evidence to support the verdict. The conviction was reversed. As the court suggested in Poulos v. Rucker (M. D. Ala.) 288 F. Supp. 305, 309, it is no disrespect to police officers to insist that in this sensitive area decisions be made according to more rigorous standards, employed by more expertly trained persons, than standards fixed by members of the vice squad.

More recently, the problem was considered by the Supreme Court of California in In re Giannini, 69 Cal. (2d) 563, 574, 72 Cal. Rptr. 655, 663, 446 P. (2d) 535, 543. There, in reversing a

conviction for presenting publicly nude entertainment, the court held:

"* * * We conclude the convictions must be set aside because the prosecution failed to introduce any evidence of community standards, either that [defendant's] conduct appealed to prurient interest or offended contemporary standards of decency."

The court recognized a split of authority regarding the burden of proof but concluded that expert testimony should have been introduced to establish community standards.

"* * * We cannot assume that jurors in themselves necessarily express or reflect community standards; we must achieve so far as possible the application of an objective, rather than a subjective, determination of community standards. An even-handed application of the criminal law, even with evidentiary guidance * * * is sufficiently difficult in an area so confusing and intricate as obscenity. To sanction convictions without expert evidence of community standards encourages the jury to condemn as obscene such conduct or material as is personally distasteful or offensive to the particular juror."

I am impressed by the reasoning of cases which require a more thoughtful consideration of the elements of obscenity than is permitted by reliance on the subjective reaction of the factfinder. While it may be argued that in a case tried to a court without a jury there is a presumption that in arriving at a decision the judge will have in mind all of the elements of the offense, in this area of judicial responsibility he has no particular expertise on which to draw. In effect, he is called on to take judicial notice of whether the dominant theme of the material appeals to a prurient interest in sex; whether it affronts contemporary community standards relative to sex; and whether it is utterly without redeeming social value. In my opinion, neither judge nor jury is qualified to make such findings of fact so as to deprive a defendant of First Amendment protection without more evidence

than the material itself.[1] For that reason, I would reverse the convictions here for review.

### Comparable Material

In determining contemporary community standards, I submit it was error for the trial court to exclude from evidence other books currently acceptable to the reading public.[2] Although the trial court must necessarily have broad discretion in limiting the kind and volume of evidence which may properly be received for purposes of comparison, I think it improper to exclude from evidence *all* such evidence. Certainly it is germane that the approach and format of the material alleged to be offensive are similar to those which have been approved by the court in books such as *Fanny Hill,* which the court here refused to receive. Counsel should be permitted to argue that the books challenged in a particular case do not exceed in candor other material expressly approved by judicial decision or openly sold in ordinary bookstores, from which it may be inferred they do not affront community standards.

This was the conclusion reached by the Maryland Court of Appeals in Yudkin v. State, 229 Md. 223, 182 A. (2d) 798, where books comparable to *Tropic of Cancer,* offered for comparison by the jury, were held to have been erroneously excluded.

More recently, the Supreme Court of Pennsylvania has held in Commonwealth v. Dell Publications, Inc. 427 Pa. 189, 202, 233 A. (2d) 840, 847:

"There are two yardsticks by which contemporary community standards may be judged. One is to compare the challenged book to other books which have either been held entitled to the protection of the First Amendment or, in the absence of litigation,

---

[1] The United States Supreme Court has granted certiorari in a case which deals with the state's burden of proof, Stein v. Batchelor (N. D. Tex.) 300 F. Supp. 602. 396 U. S. 954, 90 S. Ct. 428, 24 L. ed. (2d) 419.

[2] It might be relevant, for example, that *Portnoy's Complaint* and *Naked Came the Stranger* were number three and number four best sellers in the area of fiction last fall. Time Magazine, October 3, 1969.

which meet contemporary standards and are substantially similar to the challenged book. The other is to consider the reception the book received from the community when it was released."

I do not suggest that a defendant has a right to deluge the court with other material claimed to have community approval or sanctioned by judicial decision. However, within manageable limits, it is incumbent upon the factfinder to assess community standards by reference to what is patently acceptable. To that end, the defendant should not have been arbitrarily precluded from offering in evidence material which he claimed was comparable, and I believe that it was error to deny him that opportunity.

### Effect of Redrup on Determination of Customary Limits of Candor

In his concurring opinion in the Fanny Hill case, Mr. Justice Douglas stated (383 U. S. 427, 86 S. Ct. 981, 16 L. ed. [2d] 10) :

"We are judges, not literary experts or historians or philosophers. We are not competent to render an independent judgment as to the worth of this or any other book, except in our capacity as private citizens. * * * If there is to be censorship, the wisdom of experts on such matters as literary merit and historical significance must be evaluated."

Mr. Justice Stewart in Jacobellis v. Ohio, *supra,* was of the opinion that obscenity laws are constitutionally limited to hard-core pornography. In his concurring opinion, without attempting to define hard-core pornography, which he doubted he could do intelligibly, he made this much-quoted observation (378 U. S. 197, 84 S. Ct. 1683, 12 L. ed. [2d] 804) :

"* * * But I know it when I see it, and the motion picture involved in this case is not that."

With respect to the five books here for consideration, I have no hesitation in expressing a personal opinion that their

dominant theme, taken as a whole, appeals to a prurient interest in sex and is utterly without redeeming literary or social value. However, as offensive as they are, I submit we cannot on this record say as a matter of law they go substantially beyond customary limits of candor in description or representation of matters of sex.

Under the rule laid down by the United States Supreme Court in Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. (2d) 515, and subsequent Supreme Court cases relying on Redrup, I am convinced that the material before us enjoys First Amendment protection.

It is clear to those courts which are struggling to find a definition of hard-core pornography that the United States Supreme Court is hopelessly divided on the subject and no longer attempts to fashion a precise definition. The state and Federal courts are therefore left to distill their own rules as best they can, based on an analysis of the many decisions which the Supreme Court has reversed on the authority of the Redrup case.[3]

However burdensome may be a protracted recitation of the material which has now been granted First Amendment protection, I know of no better way to illustrate the scope of the Supreme Court's ruling in Redrup v. New York, *supra*. In Aday v. United States, 388 U. S. 447, 87 S. Ct. 2095, 18 L. ed. (2d) 1309, the trial court sustained convictions for mailing obscene material in interstate commerce. In an appendix to its opinion the court graphically summarized the material it found to be offensive. United States v. West Coast News Co. (W. D. Mich.) 228 F. Supp. 171. The Sixth Circuit United States Court of Appeals affirmed, characterizing the material as follows (357 F. [2d] 855, 858):

"* * * Without palliating interruption, the story moves quickly from one sexual enterprise to another. So numerous are these

---

[3] Since May 8, 1967, when Redrup was decided, the Supreme Court has reversed some 20 lower court decisions by reference to Redrup in cases set forth as an appendix.

events that even the practiced skill of the author runs out of fresh imagery and dully repeats his supply of leering adjectives."

The court thereupon concluded that "we know hard core pornography when we see it." The Supreme Court reversed.

A book held not obscene by the Supreme Court in Corinth Publications, Inc. v. Wesberry, 388 U. S. 448, 87 S. Ct. 2096, 18 L. ed. (2d) 1310, was characterized by the highest court of Georgia as devoted to lengthy and vivid accounts of preparation for and acts of sexual promiscuity, which the Georgia court said were "* * * filthy and disgusting. Further description is not necessary, and we do not wish to sully the pages of the reported opinions of this court with it." Id. 221 Ga. 704, 710, 146 S. E. (2d) 764, 768.

The material which the United States Supreme Court held protected in Books, Inc. v. United States, 388 U. S. 449, 87 S. Ct. 2098, 18 L. ed. (2d) 1311, was condemned by a distinguished Federal judge, Charles Wyzanski, Jr., in Id. (1 Cir.) 358 F. (2d) 935, 936, as follows:

"* * * Adulteries, seductions, and orgies are the only events of importance. The contacts described include not only sexual intercourse, but sodomy and other perversions. There is not any serious effort to portray the reality of cultural or social conditions of even the most neurotic or sordid portion of the population."

The opinion of the Kansas Supreme Court, State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P. (2d) 703, reversed by the United States Supreme Court, A Quantity of Copies of Books v. Kansas, 388 U. S. 452, 87 S. Ct. 2104, 18 L. ed. (2d) 1314, described the material held obscene as reciting, to the exclusion of anything else, illicit sexual capers and feats of sexual prowess and perversion, patently offensive and having no appeal except to the prurient. The books made no effort to present ideas, to tell a story, or advance human knowl-

edge or understanding in science, literature, or art, and the Kansas court held they lacked any redemptive feature of social value or importance. Nevertheless, they were given First Amendment protection.

A case of particular significance reversed per curiam by the United States Supreme Court in reliance on Redrup is Central Magazine Sales, Ltd. v. United States, 389 U. S. 50, 88 S. Ct. 235, 19 L. ed. (2d) 49. The opinions of the lower courts, United States v. 392 Copies of a Magazine Entitled "Exclusive" (D. Md.) 253 F. Supp. 485, 492, and Id. (4 Cir.) 373 F. (2d) 633, 634, describe nude photographs posed in precisely the same manner as those contained in *True Love Stories of Growing Up,* one of the two books which was the subject of the prosecution of defendant Lee.

A motion picture which was held obscene in Robert Arthur Management Corp. v. State, 220 Tenn. 101, 414 S. W. (2d) 638, was described by the Tennessee Supreme Court as having no appeal except to prurient interest, devoid of any literary, scientific, or artistic value, and utterly without social importance.

"* * * If this film is not patently offensive to the public or does not go substantially beyond customary limits of candor in dealing with sex, then we do not think it possible to make such a film. * * * The effect of the film is just to add to the sexual filth already in the world." 220 Tenn. 113, 414 S. W. (2d) 643.

Notwithstanding these findings, the decision was reversed by the United States Supreme Court in Robert-Arthur Management Corp. v. Tennessee ex rel. Canale, 389 U. S. 578, 88 S. Ct. 691, 19 L. ed. (2d) 777.

### Redrup Tests Applied by Other Courts

A careful reading of the cases cited leads me to the inescapable conclusion that the books here for consideration cannot be held criminally obscene unless the state has proved beyond a reasonable doubt one or more of the significant elements to which the court made reference in Redrup. In other words, the test seems to be whether or not the sale or distribution was directed at

110

juveniles; whether it was an obtrusive assault on individual privacy; and whether there was evidence of pandering.

My views in this regard are fortified, I submit, by a number of other decisions which have sought to apply the Redrup rule. The United States Court of Appeals in Grant v. United States (9 Cir.) 380 F. (2d) 748, reversed a conviction for using the mails to sell what it described as rotten books, obsessed with sex, which were at best "junk." The court held that they were of the same quality as those dealt with in the Redrup case. A similar result was reached in People v. Stabile, 58 Misc. (2d) 905, 296 N. Y. S. 815, where the Criminal Court of New York City felt obliged to dismiss criminal complaints in reliance on Redrup although the court noted that the material before it was "coarse, puerile, offensive and distasteful." 58 Misc. (2d) 912, 296 N. Y. S. (2d) 824.

I subscribe to the assessment made by the Supreme Court of Pennsylvania in Commonwealth v. Dell Publications, Inc. 427 Pa. 189, 210, 233 A. (2d) 840, 852. There, the court observed that Redrup may yet prove to be the most significant of the obscenity opinions and seems to signify the Supreme Court's final abandonment of its futile search for a definition of obscenity. The court observed that Redrup approached the problem by reference to the circumstances under which publication of the material might be constitutionally restricted. The court then set forth the three elements described in Redrup and found none of them present. The lower court's finding that the book *Candy* was obscene was reversed. Three other jurisdictions have laid similar stress on Redrup: The Federal District Court for Maryland in United States v. 4,400 Copies of Magazines, 276 F. Supp. 902; the Ohio Court of Common Pleas in State v. J. L. Marshall News Co. 13 Ohio Misc. 60, 232 N. E. (2d) 435; and the Michigan Court of Appeals in Wayne County Prosecutor v. Doerfler, 14 Mich. App. 428, 463, 165 N. W. (2d) 648, 664.[4]

---

[4] See, also, Poulos v. Rucker (M. D. Ala.) 288 F. Supp. 305; People v. Bonanza Printing Co. 271 Cal. App. (2d) 871, 76 Cal. Rptr. 379.

The United States Court of Appeals for the Eighth Circuit in an opinion written by Judge Donald Lay, Luros v. United States, 389 F. (2d) 200, has also called attention to the areas in which the court in Redrup said prosecutions might succeed. That court, too, felt that Redrup indicated an attitude to ban only hard-core pornography. Although the material in the Luros case was described as "just plain trash," there was said to be insufficient evidence of pandering to affirm a conviction. Judge Lay concluded his opinion by adopting what I consider the proper approach to this difficult area of the law (389 F. [2d] 206) :[5]

"Many well-intentioned citizens become disgusted or offended with the freedom by which purveyors of trash place their publications in the mail. But within the juridical balance is the basic concern over governmental interference into free channels of expression. It is far better there be a tight rein on authoritarian suppression, notwithstanding a conflict with some individuals' tastes or customary limits of candor, than that we live in a stifled community of self-censorship where men must feel apprehension over expression of an unpopular idea or theme. Still within our human possession is the free will to make an independent choice of values and to teach our children to do the same. Paternalistic censorship by government must continue to limit that choice only in the most extreme of circumstances. Thus we view the general reluctance of the law to go further in this area."

---

[5] Judge Lay's views find strong support in Stanley v. Georgia, 394 U. S. 557, 89 S. Ct. 1243, 22 L. ed. (2d) 542, where the United States Supreme Court noted that there appears to be little empirical basis for the assertion that exposure to obscenity may lead to deviant sexual behavior or crimes of violence, citing Cairns, Paul & Wishner, *Sex Censorship: The Assumptions of Anti-Obscenity Laws and the Empirical Evidence,* 46 Minn. L. Rev. 1009; Jahoda, The Impact of Literature: A Psychological Discussion of Some Assumptions in the Censorship Debate, summarized in an appendix to the concurring opinion of Judge Frank in United States v. Roth (2 Cir.) 237 F. (2d) 796, 814.

112

*Summary*

By way of summary, I do not feel the material before us comes within the test of what is forbidden by Redrup for the following reasons:

(a)   There was no evidence that the material was being sold to juveniles and no statute forbidding such sales was involved. In this connection, it should be noted that the Supreme Court has sustained such a statute in Ginsberg v. New York, 390 U. S. 629, 636, 88 S. Ct. 1274, 1279, 20 L. ed. (2d) 195, 202. In other decisions it has also expressed a solicitous concern for restricting these First Amendment rights to purchases by adults. Interstate Circuit, Inc. v. City of Dallas, 390 U. S. 676, 690, 88 S. Ct. 1298, 1306, 20 L. ed. (2d) 225, 235; Stanley v. Georgia, 394 U. S. 557, 89 S. Ct. 1243, 22 L. ed. (2d) 542. The court has made it clear that a statute similar to Minn. St. 617.241 would be upheld and conviction sustained were the purpose of the law to prevent the sale of obscene material to juveniles.

(b)   In the instant case, evidence was introduced to show that books dealing with sex were prominently displayed throughout the store and were its principal stock in trade. This testimony, however, was directed at the issue of scienter. There is no showing nor any claim that the displays were obtrusive or an assault upon individual privacy. It is not argued that an unwilling individual would find it impossible to avoid exposure to the publications in question.

(c)   Finally, the record is bare of any evidence of pandering such as warranted a conviction in Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. ed. (2d) 31. That case involved extensive advertising and solicitation and a deliberate and studied attempt to emphasize "the sexually provocative aspects of the work, in order to catch the salaciously disposed." The court went on to say: "[The petitioners] proclaimed its obscenity; and we cannot conclude that the court below erred in taking their own evaluation at its face value and declaring the book as a whole obscene despite the other evidence." 383 U. S. 472, 86 S. Ct. 948,

16 L. ed. (2d) 39. Whatever may have been the motives or the manner of production and distribution of the books which are the subject of this litigation, there is nothing before us to support a finding of pandering of the kind condemned in the Ginzburg case. I would therefore hold that Redrup v. New York, *supra*, and the subsequent decisions of the United States Supreme Court based on that case require a reversal.

### Appendix

The following United States Supreme Court decisions have reversed lower courts on the authority of Redrup v. New York, Austin v. Kentucky, and Gent v. Arkansas, 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. (2d) 515, [rehearing denied as to Austin v. Kentucky, 388 U. S. 924, 87 S. Ct. 2091, 18 L. ed. (2d) 1377]:

Keney v. New York, 388 U. S. 440, 87 S. Ct. 2091, 18 L. ed. (2d) 1302.

Friedman v. New York, 388 U. S. 441, 87 S. Ct. 2091, 18 L. ed. (2d) 1303.

Ratner v. California, 388 U. S. 442, 87 S. Ct. 2092, 18 L. ed. (2d) 1304.

Cobert v. New York, 388 U. S. 443, 87 S. Ct. 2092, 18 L. ed. (2d) 1305.

Sheperd v. New York, 388 U. S. 444, 87 S. Ct. 2093, 18 L. ed. (2d) 1306.

Avansino v. New York, 388 U. S. 446, 87 S. Ct. 2093, 18 L. ed. (2d) 1308.

Aday v. United States, 388 U. S. 447, 87 S. Ct. 2095, 18 L. ed. (2d) 1309, reversing United States v. West Coast News Co. (6 Cir.) 357 F. (2d) 855.

Books, Inc. v. United States, 388 U. S. 449, 87 S. Ct. 2098, 18 L. ed. (2d) 1311, reversing Id. (1 Cir.) 358 F. (2d) 935.

A Quantity of Copies of Books v. Kansas, 388 U. S. 452, 87 S. Ct. 2104, 18 L. ed. (2d) 1314, reversing State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P. (2d) 703.

Mazes v. Ohio, 388 U. S. 453, 87 S. Ct. 2105, 18 L. ed. (2d) 1315, reversing State v. Mazes, 7 Ohio St. (2d) 136, 218 N. E. (2d) 725.

Schackman v. California, 388 U. S. 454, 87 S. Ct. 2107, 18 L. ed. (2d) 1316.

Potomac News Co. v. United States, 389 U. S. 47, 88 S. Ct. 233, 19 L. ed. (2d) 46, reversing United States v. 50 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun" (4 Cir.) 373 F. (2d) 635.

Conner v. City of Hammond, 389 U. S. 48, 88 S. Ct. 234, 19 L. ed. (2d) 47.

Central Magazine Sales, Ltd. v. United States, 389 U. S. 50, 88 S. Ct. 235, 19 L. ed. (2d) 49, reversing United States v. 392 Copies of Magazine Entitled "Exclusive" (4 Cir.) 373 F. (2d) 633.

114

Chance v. California, 389 U. S. 89, 88 S. Ct. 253, 19 L. ed. (2d) 256.

I. M. Amusement Corp. v. Ohio, 389 U. S. 573, 88 S. Ct. 690, 19 L. ed. (2d) 776, reversing State v. I. & M. Amusements, Inc. 10 Ohio App. (2d) 153, 226 N. E. (2d) 567.

Robert-Arthur Management Corp. v. Tennessee ex rel. Canale, 389 U. S. 578, 88 S. Ct. 691, 19 L. ed. (2d) 777, reversing Robert Arthur Management Corp. v. State, 220 Tenn. 101, 414 S. W. (2d) 638.

Felton v. City of Pensacola, 390 U. S. 340, 88 S. Ct. 1098, 19 L. ed. (2d) 1220, reversing Id. (Fla. App.) 200 So. (2d) 842.

Henry v. Louisiana, 392 U. S. 655, 88 S. Ct. 2274, 20 L. ed. (2d) 1343, reversing State v. Henry, 250 La. 682, 198 So. (2d) 889.

Carlos v. New York, 396 U. S. 119, 90 S. Ct. 395, 24 L. ed. (2d) 303.